Breitel, J.
Defendant Lewis Goldman, a former New York City Police officer, appeals from a judgment of the Appellate Division, First Department, which unanimously affirmed, without opinion, his conviction on two counts of perjury in the first degree (former Penal Law, §§ 1620, 1620-a). In 1964 defendant had signed a limited waiver of immunity and testified before the Grand Jury of New York County which was then investigating bribery of public officials in connection with violations of the gambling laws. During his testimony, defendant denied that he had ever met one “ Grumpy” Johnson, a gambler, or that he had ever received anything from Johnson in August, 1960. An indictment for perjury, based on these denials, was returned against defendant on July 19, 1965. After a jury trial in Supreme Court, New York County, defendant was convicted of perjury on March 14, 1966 and sentenced to a term of one year and six months to three years.
Relying on Garrity v. New Jersey (385 U. S. 493) defendant’s primary contention is that the waiver of immunity signed by him prior to his testimony was wholly “void” because it was extracted on pain of losing his job (New York City Charter, § 1123). Consequently, as he was a prospective defendant of the Grand Jury investigation, defendant claims that he could not be prosecuted for his allegedly perjurious testimony before that body “ in the absence of a * * * validly executed waiver of immunity. ’ ’ Alternatively, defendant argues that he was “deprived of due process” in that the events which formed the basis of his testimony before the Grand *155 Jury and which led to Ms indictment for perjury occurred in 1960, more than four years before he was called as a witness. Finally, defendant argues that there was insufficient evidence to support Ms conviction because he never made a ‘‘ clear and unequivocal ” denial before the Grand Jury that he had known or received anything from the gambler, Johnson.
On September 29, 1964 defendant appeared before the Grand Jury and was informed of the purpose of its investigation. He was advised that he had a right to refrain from answering questions which he believed might incriminate him but that if he wished to retain his employment as a police officer, he was required to sign a limited waiver of immunity. Defendant was also informed that if he signed the waiver, “ whatever you say may be used in evidence against you should you become a defendant.” Defendant stated that he understood and, thereafter, signed a waiver.
Apart from some preliminary questions concerning his finances, the inqmry of defendant was confined to his activities on August 3, 1960 and, specifically, whether he had met the gambler, Johnson, on that date and received anything from him. Defendant was shown a photograph taken on that date by a hidden police motion picture camera wMch depicted Johnson handing sometMng to another man. While he conceded that the other man in the picture “ looks like me,” defendant gave the following answers when he was questioned about Johnson:
“ Question: Do you know a policy gambler by the name of Johnson?
“ Answer: No, sir.
“ Question: Did you ever meet him?
“ Answer: No, sir.
“ Question: Did you ever talk to him?
“ Answer: No, sir.
“ Question: I direct your attention again to Grand Jury ExMbit 220 and ask you whether or not you, Patrolman Goldman, in August of 1960, ever received anything from Mr. Johnson?
“ Answer: I don’t even know Mr. Johnson, Mr. Andreoli.
“ Question: Will you look at 220 [the picture] again?
“ Answer: Yes, sir.
*156 “ Question: That shows a picture of a man, I will tell you his name is Mr. Johnson, handing something to a man standing on the stairway which you say looks like you?
“ Answer: Yes, sir.
“ Question: Did you, Patrolman Goldman, ever receive anything from the man shown in that picture?
“ Answer: No, sir.”
Upon further questioning, defendant stated several times that he did not recall being at the place where the picture was taken nor could he remember the incident depicted. When asked again, however, whether he had ever met Johnson, defendant said, without qualification, “No, sir.”
At trial, after this testimony had been introduced, a Detective Robert Miles testified that, while in hiding, he had taken the photograph in question (a “still” excerpted from a motion picture film). Other pictures were introduced of the same incident and Detective Miles identified the two men in all the pictures as defendant and Johnson, a “Known [policy] Gambler.” Miles also testified that on two separate occasions during this incident, Johnson had handed money in bill form to defendant. The second payment was made after Johnson had. received money from another gambler, William Larkins, and passed it on to defendant.
Another detective, Gerald Edwards, who had observed the meeting between defendant and Johnson, corroborated Miles’ testimony and the identifications of the two men in the pictures. William Larkins also testified that he recognized one of the men in the photographs as defendant, who was known to Larkins only as “Louie * * * the captain’s man.”
Defendant testified in his own behalf and stated that he knew neither Johnson nor Larkins and had never received any money from them. While he admitted that one of the men in the pictures looked like him, defendant denied that it was he or that he had been there. On summation, counsel for defendant stressed that it was unfair for the District Attorney to delay defendant’s appearance béfore the Grand Jury until 1964, four years after his alleged meeting with Johnson.
Turning first to the question of waiver, defendant urges that, as in Garrity v. New Jersey (385 U. S. 493, supra), the waiver he signed before his Grand Jury testimony was the product *157 of coercion. In the Garrity case* decided almost a year after the trial in this case, the Supreme Court held that the failure of the police officers to raise their privilege against self incrimination was motivated, not by free choice, but by the threat of removal from public office. Consequently, the testimony obtained under this ‘‘ duress ” could not be used against them ‘‘ in subsequent prosecutions for conspiracy to obstruct the administration of the traffic laws ” (supra, p. 495). Defendant, assuming on the authority of the Garrity case that his waiver was therefore, “ invalid,” concludes that, as he was a “ potential defendant” before the Grand Jury, the oath “ could not be legally administered to him ’ ’ and he may not now be prosecuted for perjury, even if People v. Gillette (126 App. Div. 665) and subsequent decisions of this court which have followed the Gillette rule were applicable. (But see People v. Tomasello, 21 N Y 2d 143, decided herewith.)
As defendant concedes, the Gillette rule, assuming that it were still a viable rule, does not obtain when the witness, albeit a prospective defendant or one of the subjects of the inquiry, waives his right against self incrimination (see People v. Yonkers Contr. Co., 17 N Y 2d 322, 334-335; People v. Macner, 171 Misc. 720, 722-723). Nor has the rule protected one who had been granted immunity from prosecution for any substantive crimes from penalties for perjurious or contumacious testimony (People v. Reiss, 255 App. Div. 509, 511-516, affd. 280 N. Y. 539; see People v. Gittleson, 18 N Y 2d 427). The basis for both of these exceptions is that, unlike the situation in the Gillette case, defendants who either waive or are granted immunity for substantive crimes may then be “ legally ” sworn (People v. Reiss, 255 App. Div. 509, 512, supra).
With this in mind, it is appropriate to consider the nature and effect of the waiver signed by defendant, particularly in the light of this court’s recent decision in Matter of Gardner v. Broderick (20 N Y 2d 227). In the Gardner case, the petitioner had been dismissed from the New York City Police Department for refusing to waive his privilege against self incrimination when subpoenaed before the Grand Jury. Relying upon the Garrity case, petitioner contended that his discharge was ‘ ‘ unconstitutional. ’ ’ The court, while noting that any testimony taken from petitioner under this waiver would be *158 ‘‘ inadmissible in a criminal prosecution,” held, nevertheless, that petitioner’s refusal to testify “bore upon his fitness to remain in office ’ ’ and constituted ‘‘ ‘ employee insubordination ’ ” for which he might be dismissed (supra, pp. 230-231).
For present purposes, the importance of the Gardner case is its holding that a public officer may be validly compelled to testify before a Grand Jury even though his testimony would be the product of “duress”—namely, the threat of removal from public office. True, any waiver exerted by means of this coercive force would be ineffective to prohibit him from raising his right against self incriminatory testimony bearing on a substantive crime, but it by no means follows that he cannot be legally sworn. Quite the contrary, the Gardner case indicates that the oath may be validly administered to a public officer and testimony may be required of him.
And, if such an officer may be compelled to testify, there must, of course, be sanctions for perjurious or contumacious testimony. Otherwise, the result of the Gardner case would be largely meaningless: the officer must testify, if he is to keep his position, but he can, with impunity, lie, or even refuse to answer questions.
The most appropriate analogy is to the prospective defendant who is called before the Grand Jury and granted immunity from prosecution for substantive crimes. As noted above, such a witness was not protected by the Gillette rule, even before its restatement by this court in People v. Tomasello (21 N Y 2d 143, supra) in that he may be validly sworn and subsequently prosecuted for perjurious or contumacious answers. The rationale for such a result was explained in Glickstein v. United States (222 U. S. 139). There, a witness who had been granted immunity under the Bankruptcy Act from prosecution for substantive crimes gave perjurious testimony. In upholding his conviction for perjury, the Supreme Court held: ‘‘ the statute expressly commands the giving of testimony, and its manifest purpose is to secure truthful testimony, while the limited and exclusive meaning which the [defendant’s] contention attributes to the immunity clause would cause the section to be a mere license to commit perjury, and hence not to command the giving of testimony in the true sense of the word.
“ The argument that because the section does not contain *159 an expression of the reservation of a right to prosecute for perjury in harmony with the reservations in Rev. Stat., § 860, and the act of 1893, therefore it is to be presumed and it was intended that no such right should exist, we think, simply begs the question for decision, since it is impossible in reason to conceive that Congress commanded the giving of testimony, and at the same time intended that false testimony might be given with impunity in the absence of the most express and specific command to that effect” (supra, p. 143).
It is interesting to note that in a recent California case involving facts substantially similar to those involved here, the court, relying on the Glickstein, case, upheld the defendant’s conviction for perjury (People v. Genser, 250 Cal. App. 2d 351 [Dist. Ct. of App., 1967]). Even though it does not appear that the California courts have held that a public officer may be dismissed for refusing to waive his privilege against self incrimination when questioned about his official duties, the court in the Genser case distinguished the Garrity case and held that “ one compelled to make sworn statements under compulsion such as illustrated by the facts at bench ” does not have “ a license to make untruthful statements ” (250 Cal. App. 2d 351, 355, supra).
The import of Matter of Gardner v. Broderick (supra), like the statute involved in the Glickstein case, is that testimony should be given by a public officer and ‘‘ its manifest purpose is to secure truthful testimony ”. Even though the testimony may not be used against him in a prosecution for any substantive crime, he is not immune from penalties for crimes inherent in the giving of the testimony itself.
Defendant’s additional contentions are of no merit. He contends that when his testimony before the Grand Jury is read as a whole, particularly in the light of his oft-reiterated failure of recollection on many details, it is impossible to isolate an outright denial that he ever met Johnson or received something from him. The contention is refuted by the record. While defendant repeatedly professed that he was unable to remember details, such as where he was on the particular day involved, he categorically denied that he knew Johnson, had ever met him., or received anything from him. The falsity of these denials was proved by the testimony of the People’s witnesses.
*160 Finally, defendant argues that the District Attorney unfairly delayed his appearance before the G-rand Jury until more than four years had elapsed from the time of his meeting with Johnson. The contention is not answered by the fact that the indictment for perjury was brought about nine months after defendant’s testimony before the Grand Jury (and, therefore, well within the five-year limitation of section 142 of the Code of Criminal Procedure). But, at most, the delay was a factor to be considered by the jury in determining whether defendant really could not remember meeting Johnson. Counsel for defendant recognized this by stressing the point in his summation, but the jury, in view of his outright denials on this score, must have found that the passage of time had not clouded defendant’s memory—at least with respect to his dealings with Johnson.
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi, Bergan and Keating concur.
Judgment affirmed.