[Civ. No. 21728. Third Dist. Jan. 3, 1983.]

P. T. AIRFAST SERVICES, INDONESIA, Petitioner, v.
THE SUPERIOR COURT OF SISKIYOU COUNTY, Respondent;
SHARA MARISA KAUFMAN, a Minor, etc., et al., Real Parties in Interest.

## Counsel

Kern, Wooley & Maloney, R. M. Kern and Michael J. Terhar for Petitioner.

No appearance for Respondent.

Newton & Newton, Jack Halpin, Ron Rau and Albert H. Newton, Jr., for Real Parties in Interest.

## Opinion

**SPARKS, J.**—Petitioner P. T. Airfast Services, Indonesia, an Indonesian corporation, seeks a peremptory writ of mandate directing the respondent Superior Court of Siskiyou County to quash the service of summons upon it. Petitioner is a defendant in a wrongful death action brought against it by real parties in interest Shara Marisa Kaufman, a minor, and her mother, Jacqueline Kaufman, individually and as guardian ad litem for Shara. We shall issue the writ.

### Facts

Petitioner is a company organized and existing under the laws of Indonesia. Its business consists of charter aviation services in Southeast Asia. In the trial court petitioner asserted, without dispute, that it has never had any employees, offices, telephone listings, agents, ticket agents, bank accounts, assets, real property, personal property, or agents for the service of process in the State of California or in the United States. Petitioner further asserted, again without dispute, that it has never advertised or solicited or transacted business in the State of California or in the United States, and that it does not have and has never had any flights originating or landing in the United States. Finally, petitioner has never authorized ticket agents in the United States to issue tickets on its behalf through any of the airline interline agreements. In short, its air service is limited to private charter flights and does not involve any regularly scheduled public flights.

On or about March 2, 1981, petitioner, as carrier, and Hudbay Oil (Malacca Strait) Ltd., as charterer, entered into an aircraft charter agreement in Jakarta, Indonesia, which provided for a series of round trip flights between Seletar Airport in Singapore, Malaysia, and Pekan Baru Airport in Sumatra, Indonesia.[1]

---

[1] Paragraph 32 of the agreement, under the heading of "General Conditions," provided: "The Carrier's Conditions of contract of Passengers, Baggage and Goods (which are based upon the Convention of Warsaw of 12th October 1929 as amended by The Hague Protocol 1955 whichever may be applicable to carriage hereunder) shall be deemed to be incorporated herein as the same are applicable therein and are not inconsistent with the conditions of this

On or about April 28, 1981, petitioner's DC-3 aircraft crashed while in a final approach to Sumatra from Singapore. Real parties' decedent, Vern Kaufman, was aboard the flight and was killed in the crash.

Vern Kaufman was a drilling rig supervisor employed by Atlantic Richfield of Indonesia. Pursuant to his employment with Atlantic Richfield, Kaufman would work one month and have the next month off. During his month off Kaufman would travel to his home in Mt. Shasta, California, from Jakarta, Indonesia. Atlantic Richfield paid for his transportation.

In March 1981, Atlantic Richfield and Hudson Bay Oil and Gas Company (Hudbay) entered into an agreement whereby Atlantic Richfield provided the services of two drilling rig supervisors for the operation of an oil rig known as Brinkerhoff No. 1. Hudbay also agreed to reimburse Atlantic Richfield for the commercial air transportation costs of its employees. Pursuant to this agreement Kaufman worked on Brinkerhoff No. 1.

In April 1981, during an off month, Kaufman made arrangements for his trip to and from the Brinkerhoff No. 1 oil rig. He purchased a commercial airline ticket issued by Pan Am from a travel agency in Mt. Shasta to take him from Redding to San Francisco, from San Francisco to Singapore, and on the return trip from Singapore to San Francisco and from San Francisco to Redding. Petitioner was not listed as a carrier on that ticket. Kaufman told his travel agent that he would take a charter flight from Singapore to Indonesia, and his agent wrote in Jakarta as his ultimate destination.[2] His agent did not, and under Indonesian law could not have, sold Kaufman a ticket on petitioner's Singapore to Sumatra flight. Pursuant to its charter agreement with Hudbay, petitioner was to provide a shuttle service for equipment and employees between Sumatra and Singapore. Kaufman intended to take petitioner's charter flight from Singapore to Sumatra, and on his return from Sumatra to Singapore. It was on petitioner's charter flight from Singapore to Sumatra on April 28, 1981, that the crash occurred in which Kaufman was killed.

Real parties in interest, Kaufman's wife and daughter, brought an action in the Siskiyou County Superior Court for wrongful death against petitioner and

Agreement."

The United States has never adhered to The Hague Protocol. (*Reed* v. *Wiser* (2d Cir. 1977) 555 F.2d 1079 [38 A.L.R. Fed. 928].)

[2]The ticket issued to Kaufman by Pan Am listed this itinerary: Redding, CA to San Francisco, CA via Republic; San Francisco to Singapore, Malaysia via Pan Am; unscheduled from Singapore to Jakarta, Indonesia; Jakarta to Singapore via Garuda; Singapore to San Francisco via Pan Am; San Francisco to Redding via Western.

Although Kaufman's destination was Jakarta, petitioner's charter flight was from Singapore to Sumatra. We are not informed as to the manner of transportation Kaufman intended to use from Sumatra to Jakarta, but it is clear that his plans did not include flying into Jakarta on petitioner's aircraft.

others. Petitioner asserts on information and belief that the complaint and a service of summons were served on the California Secretary of State who then mailed the summons and complaint to petitioner. A first amended complaint was later sent to the attorneys representing petitioner in this petition, but was not served on petitioner. Petitioner's motion to quash the service of summons was denied and this petition for a writ of mandate followed.

## DISCUSSION

■ Personal jurisdiction over a nonresident is normally permitted by California courts so long as that person maintains such minimal contacts with this state that traditional notions of fair play and substantial justice are not offended by the assertion of such personal jurisdiction. (*Stanley Consultants, Inc.* v. *Superior Court* (1978) 77 Cal.App.3d 444, 447 [143 Cal.Rptr. 655]; see also Code Civ. Proc., § 410.10.) There can be no question that real parties in interest did not show sufficient minimum contacts of petitioner with this state. In fact, no contacts of any nature were shown with this state or any of the United States. The sole basis upon which real parties assert that jurisdiction is proper over petitioner is the Warsaw Convention.

The Warsaw Convention is actually entitled: "Convention for Unification of Certain Rules Relating to International Transportation by Air." The convention was written in 1929, but this country did not become a party to it until 1934. (49 Stats. 3000, T.S. 876; for the text of the Warsaw Convention see the note in 49 U.S.C.A. § 1502.) ■ The Warsaw Convention is a treaty of the United States and as such it preempts local laws in the areas in which it applies. (U.S. Const., art. VI, cl. 2; *Husserl* v. *Swiss Air Transport Company, Ltd.* (D.C.N.Y. 1972) 351 F.Supp. 702, affd. at 485 F.2d 1240.) The purpose of the Warsaw Convention is to facilitate international air travel by providing uniform rules for such travel. (*Pierre* v. *Eastern Air Lines* (D.C.N.J. 1957) 152 F.Supp. 486.) It provides a limitation of potential liability for international air carriers, and provided rules to facilitate recovery. (*Husserl* v. *Swiss Air Transport Company, Ltd.* (D.C.N.Y. 1975) 388 F.Supp. 1238.)

Article 28, subdivision (1), of the Warsaw Convention provides: "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination." Article 28, subdivision (2), provides: "Questions of procedure shall be governed by the law of the court to which the case is submitted."

There has been a split of authority on the meaning of Article 28. The federal courts have held that the convention provides only "treaty jurisdiction" and not subject matter or in personam jurisdiction. According to this view the initial inquiry is whether one of the four situs requirements of Article 28, subdivision (1), has been met. If so then the United States may be a proper country in which to bring the action. Such a finding, however, does not mean that a particular court within the country may hear the action. Questions of subject matter jurisdiction and personal jurisdiction over the defendant still must be resolved by reference to the domestic laws of the jurisdiction of the particular court. As the circuit court of appeals explained in *Smith* v. *Canadian Pacific Airways, Ltd.* (2d Cir. 1971) 452 F.2d 798, 800, "in a Warsaw Convention case there are two levels of judicial power that must be examined to determine whether suit may be maintained. The first level, on which this opinion turns, is that of jurisdiction in the international or treaty sense under Article 28 (1). The second level involves the power of a particular United States Court, under federal statutes and practice, to hear a Warsaw Convention case—jurisdiction in the domestic law sense. It is only after jurisdiction in both senses is had that the question of venue is reached and a determination made regarding the appropriateness and convenience for the parties of a particular domestic court."[3] (See also *Mertens* v. *Flying Tiger Line, Inc.* (2d Cir. 1965) 341 F.2d 851, 855; *Vergara* v. *Aeroflot "Soviet Airlines"* (D.C. Neb. 1975) 390 F.Supp. 1266; *Aenestad* v. *Air Canada, Inc.* (D.C.Cal. 1975) 390 F.Supp. 1165, app. dism. at 549 F.2d 806.)

■ In a case cited by real parties, a New York trial court held contrary to the federal interpretation of article 28 of the Warsaw Convention. (*Berner* v. *United Airlines* (1956) 2 Misc.2d 260 [149 N.Y.S.2d 335, 343-345], affd. at 3 N.Y.2d 1003 [170 N.Y.S.2d 340, 147 N.E.2d 732].) In that case the court held that by engaging in international air flights a carrier consents to in personam jurisdiction in one of the forums set forth in article 28, subdivision (1). (*Ibid.*)[4] Real parties argue that California is an appropriate forum for

---

[3]The *Smith* court further observed in a footnote that "If the Convention allows suit, a plaintiff may pursue his case in a federal or a state court, Congress having never placed Warsaw Convention suits exclusively within the province of federal courts. We naturally view this case from the perspective of a federal court, but the issue involved is whether suit may be brought at all in the courts of the United States, considered collectively." (*Id.*, at p. 800, fn. 3.)

[4]*Berner* does not aid real parties. There the deceased passenger purchased, in New York City, a round trip ticket from New York to Sydney, Australia, from a general sales agent for the foreign carrier. *Berner* merely held that since Article 28 was part of the contract of carriage for decedent's flight, "it constituted an acceptance by the foreign carrier of jurisdiction over it in any of the forums in which, under the provisions of Article 28, the passenger or his executors might elect to sue, these including New York as the place of destination and as the place of business through which the contract was made." (*Id.*, at pp. 341-342.) Here, in contrast, petitioner was not a party to the contract of flight carriage upon which jurisdiction of the California court is sought to be invoked. Petitioner consequently did not contractually consent to jurisdiction in California.

their wrongful death action under article 28, subdivision (1), of the Warsaw Convention, and that petitioner must be deemed to have consented to in personam jurisdiction in California.

Regardless of which of the two divergent views is followed the first question which must be resolved is whether real parties have brought their wrongful death action in one of the four locations set forth in article 28, subdivision (1). If they have not done so then the motion to quash the service of summons must be granted. There is no dispute that the first three enumerated locations are not applicable here. The sole claim that California is an appropriate place in which real parties may bring their action is that this state must be considered the "place of destination."

Article 1, subdivision (3), of the Warsaw Convention provides: "Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts . . . ."[5] Real parties assert that Kaufman intended his travel to begin and end in Redding and that for this reason the flight on petitioner's aircraft from Singapore to Sumatra must be considered a part of an indivisible operation with a destination of Redding.

We must reject real parties' argument. The applicability of the Warsaw Convention is unquestionably premised upon a contract. (*Block* v. *Compagnie Nationale Air France* (5th Cir. 1967) 386 F.2d 323, 330.) The requisite contract is

---

[5]Article 30, subdivision (1), further provides: "In the case of transportation to be performed by various successive carriers and falling within the definition set out in the third paragraph of article 1, each carrier who accepts passengers, baggage or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation insofar as the contract deals with that part of the transportation which is performed under his supervision."

As the Court of Appeals of New York noted in *Egan* v. *Kollsman Instrument Corp.* (1967) 21 N.Y.2d 152, 168 [287 N.Y.S.2d 14, 234 N.E.2d 194] "It is equally clear that [the carrier] did not have to be an actual party to such original contract in order to obtain the benefits of the Convention: subdivision (1) of article 30 specifically provides that any successive air carrier who accepts passengers under a contract for international transportation is 'subject[ed] to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation.'"

Here petitioner did not accept Kaufman as a passenger under the original contract for the international flight from San Francisco. Instead, decedent merely boarded petitioner's aircraft after presenting appropriate identification as an oil company employee. Petitioner was not, therefore, a "successive carrier" within the meaning of article 30 of the Warsaw Convention. "The situation covered by Article 30 is a factual, chronological partition of a single service as contemplated by the contracting parties." G. Miller, Liability for Air Carriage under the Warsaw System in Municipal Courts (Nov. 1975)(unpublished doctoral thesis, quoted in 1 Speiser & Krause, Aviation Tort Law (1978) International Transportation, § 11:29, p. 723, fn. 51).

based upon the promise or undertaking of the carrier to transport the passenger and the reciprocal consent of the passenger. (*Id.*, at p. 333.) Petitioner undertook to transport Kaufman from Singapore to Sumatra when Kaufman presented himself for the flight and showed the requisite credentials. There was no promise or undertaking to transport Kaufman on his expected return flight one month later. Such an undertaking or agreement could only occur when Kaufman presented himself with proper credentials at an appropriate time for such a flight. Kaufman could not and did not procure a ticket by which petitioner would be required or agreed to transport him on the return flight. In short, Kaufman had only a unilateral expectation that petitioner would transport him to Singapore when his month of duty was up and he desired to return to Redding.

Our conclusion is not changed by the fact that petitioner had contracted with Hudbay to make flights between Singapore and Sumatra and to transport Hudbay employees on such flights. To be sure, the Warsaw Convention applies to so-called "voyage" charter flights. In *Block* the Atlanta Art Association had arranged a charter flight by Air France and thereafter procured customers. The court of appeals noted that a person who had paid for the flight had no right to a place on the flight until Air France issued a ticket in the person's name. (*Id.*, at p. 336.) It was clear that Air France agreed to the carriage of each individual passenger on the specified route. (*Ibid.*) Under such circumstances it was irrelevant that a third party had negotiated the agreement and signed the charter. (*Id.*, at p. 334.) The essential contract between Air France and the passengers was established when Air France issued the ticket to the customer procured by the Art Association. (*Id.*, at pp. 334, 336.)

This case is inapposite to *Block*. There was never any contract within the meaning of the Warsaw Convention by which petitioner undertook or promised to undertake to transport Kaufman on one leg of an undivided trip on which he would ultimately arrive in Redding. Petitioner's undertaking was only to transport authorized representatives of Hudbay to Sumatra. Until such time as Kaufman presented himself for the flight to Singapore from Sumatra on his return trip such a contract could not arise.[6] In order for a flight by a successive carrier to be considered part of an undivided transportation under the Warsaw Convention it must be shown that the parties regarded it as a single operation. The unilateral expectation of one party alone cannot be deemed controlling. In this case there is no evidence from which it could be inferred that petitioner

---

[6]In fact, petitioner's agreement with Hudbay called for charter flights as advised by Hudbay for a period of 10 weeks. That contract was signed by Hudbay on March 2, 1981, more than 12 weeks before Kaufman intended to make his return to Redding, California. It cannot be determined from the record when the 10-week period covered by the charter agreement commenced, nor can it be determined that the agreement would not have been concluded before Kaufman expected to return. It is thus possible that in the absence of an extension of the charter agreement Kaufman would not have been able to fly with petitioner to Singapore on his return trip.

regarded itself as part of an indivisible operation by which Kaufman would be transported to California. Accordingly it cannot be said that California was "the place of destination" of petitioner's Singapore to Sumatra flight on which the fatal crash occurred.[7]

We conclude that real parties in interest have not shown that they have brought their wrongful death action in a proper place under article 28, subdivision (1), of the Warsaw Convention. California courts thus lack "treaty jurisdiction" and petitioner is entitled to have the service of summons quashed. In view of our conclusion it is unnecessary to determine whether an air carrier must be regarded as having consented to personal jurisdiction in a court with treaty jurisdiction under the Warsaw Convention and we do not address that issue.

Let a peremptory writ of mandate issue directing the respondent Superior Court of Siskiyou County to vacate its order denying petitioner's motion to quash the service of summons and to enter a new order granting said motion. The alternative writ of mandate previously issued is discharged.

Evans, Acting P. J., and Bond, J.,* concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied March 2, 1983.

---

[7]In our view article 1, subdivision (3), of the Warsaw Convention contemplates what has become a well-established feature of contemporary air transportation. As noted in *Eck* v. *United Arab Airlines, Inc.* (2d Cir. 1966) 360 F.2d 804, at page 807, it is possible for a person to arrange an entire itinerary through one airline even though successive carriers are required for the route chosen. The agents of one airline are typically authorized to reserve and confirm a place on a connecting flight of another airline and to forward the fare collected. Under such circumstances it is clear that the parties regard the flight as one undivided transportation despite the fact that successive carriers are used. In the absence of such an arrangement, however, it is necessary that there be evidence that both parties regard the transportation as a single operation. Such evidence is lacking here.

*Assigned by the Chairperson of the Judicial Council.