[No. B101950. Second Dist., Div. Four. Dec. 12, 1996.]

MARK MICELI et al., Plaintiffs and Appellants, v.
MGM GRAND AIR, INC., Defendant and Respondent.

COUNSEL

Ian Herzog, Evan D. Marshall and Thomas Yuhas for Plaintiffs and Appellants.

Chase, Rotchford, Drukker & Bogust, Peter P. Brotzen and Gregory L. Anderson for Defendant and Respondent.

OPINION

ARANDA, J.*—

## PROCEDURAL HISTORY

Mark and Andrea Miceli (collectively referred to as appellants) filed a complaint on August 9, 1994, for personal injuries sustained by Mark Miceli on October 28, 1993, when he was an international air passenger aboard a chartered MGM Grand Air, Inc. (hereinafter MGM) flight which hit turbulent weather between San Juan, Puerto Rico and Buenos Aires, Argentina. MGM filed its answer and filed a petition for removal to the United States District Court for the Central District of California. The district court thereafter remanded the action to the superior court upon motion by the appellants.

On May 19, 1995, MGM served and filed a motion for summary adjudication based upon its tenth affirmative defense that appellants' damages were limited by the Warsaw Convention to $75,000. The motion was heard and argued on September 15, 1995, and on September 21, 1995, the trial court issued a minute order granting the motion. In October 1995 appellants filed a petition for writ of mandate (*Miceli v. Superior Court* (Oct. 25, 1995) B096355 [nonpub. opn.]) seeking review of the summary adjudication order by extraordinary writ. The petition was denied by this court. Thereafter, on February 21, 1996, MGM moved for entry of judgment in favor of appellants in that amount. The motion was granted and judgment was entered on March 5, 1996. Appellants filed a timely notice of appeal.

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## STATEMENT OF FACTS

Mark Miceli (Miceli) was employed as video director for "Madonna's Girlie Show" world tour pursuant to his contract with Music Tours, Inc. On October 28, 1993, he was a passenger on a charter flight carrying the cast and crew of the tour aboard an MGM airplane. Another entity, Music Guide, Inc., had contracted with MGM for the charter.

The charter originated in Los Angeles and had made a previous stop in Montreal for a concert before proceeding to San Juan. Miceli was not provided with a ticket or a baggage check. He alleges he had no knowledge of the charter agreement between Music Guide and MGM. The itinerary included stops in Argentina, Brazil and Mexico. It is undisputed that Canada, the United States, Argentina, Brazil and Mexico have all ratified the Warsaw Convention.

During a flight leg between Puerto Rico and Argentina the aircraft encountered severe turbulence. Miceli alleges in his complaint that the flight crew flew the plane into an area of known high turbulence, notwithstanding the risks to the passengers. While he was in the lavatory, the plane was abruptly tossed about resulting in serious personal injuries to Miceli.. His complaint alleges causes of action for negligence, willful misconduct and loss of consortium. The complaint further alleges loss of consortium by Andrea Miceli based upon the negligence or willful misconduct of MGM.

## ISSUES

1. Was the trial court correct in ruling that the charter agreement between MGM and Music Guide constituted a "passenger ticket" for all aboard the flight within the meaning of the Warsaw Convention?

2. Did the trial court act in excess of its jurisdiction in summarily adjudicating the damage issue?

## DISCUSSION

We note this appeal presents an issue of first impression in this state concerning the application of the Warsaw Convention, officially entitled "Convention for the Unification of Certain Rules Relating to International Transportation by Air" (Oct. 12, 1929, 49 Stat. 3000, T.S. 876, hereinafter the Warsaw Convention). Specifically, can a contract for charter between an international carrier and a third party charterer constitute a "passenger ticket" within the meaning of the Warsaw Convention when the passenger

has no relationship with the charterer, no knowledge of the contract, and no opportunity to see the contract or obtain notice of the convention's liability limitations?

■ The Warsaw Convention is an international treaty ratified by the United States in 1934 and is, pursuant to the United States Constitution, the supreme law of the land. (U.S. Const., art. VI, cl. 2.) It applies to all international commercial air travel and limits the carrier's liability unless the plaintiff establishes "willful misconduct" on the part of the airline. (*In re Air Crash Disaster* (6th Cir. 1996) 86 F.3d 498, 544; *Pflug* v. *Egyptair Corp.* (2d Cir. 1992) 961 F.2d 26, 28; see *In re Air Disaster at Lockerbie, Scotland* (2d Cir. 1991) 928 F.2d 1267 for a thorough history of the Warsaw Convention and its general applicability to air travel.)

The Warsaw Convention also applies to all international charter flights. (*Block* v. *Compagnie Nationale Air France* (5th Cir. 1967) 386 F.2d 323, 326, cert. den. (1968) 392 U.S. 905 [20 L.Ed.2d 1363, 88 S.Ct. 2053]; *P. T. Airfast Services, Indonesia* v. *Superior Court* (1983) 139 Cal.App.3d 162, 166 [188 Cal.Rptr. 628].) Its language is clear and unambiguous. Article 1(1) of the Warsaw Convention states: "(1) This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire. It shall apply equally to gratuitous transportation by aircraft performed by an air transportation enterprise."

While the Warsaw Convention provides for strict liability of air carriers for injuries to passengers which occur during international air travel, that liability is limited. The limitation prescribed by the convention is now set at $75,000 by a collateral agreement, known as the "Montreal Agreement," which is required by the United States for all air carriers operating in this country. (*Block* v. *Compagnie National Air France, supra*, 386 F.2d at p. 325 fn. 1; *In re Air Crash Disaster, supra*, 86 F.3d at p. 544.)

MGM argues that the liability limitations of the Warsaw Convention and Montreal Agreement are applicable in this case. Appellants argue that the limitations do not apply in this particular case. All parties agree we are dealing herein with an interpretation of article 3 of the Warsaw Convention.

Article 3 reads as follows: "(1) For the transportation of passengers the carrier must deliver a *passenger ticket* which shall contain the following particulars: [¶] (a) The place and date of issue; [¶] (b) The place of departure and of destination; [¶] (c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of

depriving the transportation of its international character; [¶] (d) The name and the address of the carrier or carriers; [¶] (e) A statement that the transportation is subject to the rules relating to liability established by this convention. [¶] (2) The absence, irregularity, or loss of the *passenger ticket* shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a *passenger ticket* having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability." (Italics added.)

This case presents an issue of fundamental importance to an increasing number of international air travelers who board charter flights. If a passenger boards such a flight without having received a ticket from the carrier, tour director or charterer and thus fails to receive any notice of the Warsaw Convention liability limitations, is the fact that the charterer entered into a contract with the carrier specifying the places of departure and destination sufficient to satisfy the requirements of article 3 of the convention that the carrier must "deliver a passenger ticket" prior to accepting the passenger as a condition of limited liability for personal injuries? The critical question is what precisely constitutes a "passenger ticket."

MGM successfully argued to the trial court that its contract with Music Guide, the charterer, constituted a "passenger ticket" for all aboard. Appellants argue that the consequence of the lack of delivery to the individual passenger of a written instrument deprives that traveler of notice of liability limitation, thereby effectively eviscerating the notice requirement of the Warsaw Convention. We agree.

The rule that words and phrases used in an enactment are presumed to have a meaning and that to perform a useful function they are to be given their common and ordinary meaning applies to the interpretation of international agreements as well. (*Suzuki Motor Co.* v. *Superior Court* (1988) 200 Cal.App.3d 1476, 1481 [249 Cal.Rptr. 376] [interpreting the Hague Convention for service of process].) "In construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfills the purpose of the treaty." (*Xerox Corp.* v. *U.S.* (Fed. Cir. 1994) 41 F.3d 647, 652.)

We have in article 3(2) of the Warsaw Convention plain language, i.e., "[I]f the carrier accepts a passenger without a passenger ticket having been delivered, he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability." It is conceded by all parties that Miceli did not receive any written instrument evidencing his

contract of passage. MGM's assertion that a charter agreement containing certain information analogous to a ticket (itinerary, place of issuance, etc.) constitutes a ticket is unsupported by any case. In each case in which the Warsaw Convention has previously been held to limit liability of the air carrier, a ticket separate and distinct from the charter agreement was issued to each individual passenger. (See *Block* v. *Compagnie Nationale Air France, supra,* 386 F.2d 323; *Warren* v. *Flying Tiger Line, Inc.* (9th Cir. 1965) 352 F.2d 494; *Mertens* v. *Flying Tiger Line, Inc.* (2d. Cir 1965) 341 F.2d 851.)

MGM argues that it need not issue passenger tickets to maintain its limited liability. Yet, the Fifth Circuit of the United States in *Block* emphasizes the necessity for "an agreement between the carrier and passenger as to transportation and as to places of *departure* and *arrival*" as evidenced in a passenger ticket and concluded that "any agreement between the owner-carrier and a third person, the charterer, is irrelevant to Warsaw purposes." (386 F.2d at p. 334, original italics.)

Block involved an Air France chartered flight by the Art Association of Atlanta. Air France dealt with the art association in making the flight details and the association secured the passengers. Individual passenger tickets were issued by Air France to each passenger. The court upheld the Warsaw Convention limitations.

In limiting the air carrier's liability in conformance with the Warsaw Convention and the Montreal Agreement, the Fifth Circuit noted that "[t]he fatal flight developed out of three sets of contractual relationships: first, the relationship between Air France and the Atlanta Art Association, created by their 'International Charter Flight Agreement'; second, the more informal set of relationships between the Art Association and the individual passengers; and third, the relationship between the individual passengers and Air France, *concluded by the airline's delivery to each passenger of a personal ticket for the flight.*" (386 F.2d at p. 335, italics added.)

In *Chan* v. *Korean Air Lines, Ltd.* (1989) 490 U.S. 122 [104 L.Ed.2d 113, 109 S.Ct. 1676] Justice Scalia, on behalf of a majority of the United States Supreme Court, clearly dictates the consequences when an air carrier fails to issue individual passenger tickets as required by the Warsaw Convention. "The only sanction in Article 3 appears in the second clause of Article 3(2), which subjects a carrier to unlimited liability if it 'accepts a passenger without a passenger ticket having been delivered.' " (*Id.* at p. 127 [104 L.Ed.2d at p. 122].)

In this case MGM argues that under *Chan* the charter agreement is a passenger ticket simply because it contained all the requirements of article

3(1). MGM's position is that "[t]he fact that the 'ticket' is fifteen pages long and contains all the terms of the contract does not mean that it is not a ticket." While *Chan* holds that a passenger ticket "irregularity," i.e., use of eight-point type rather than the required ten-point type, is not fatal to its determination that it is a ticket under Warsaw Convention nomenclature, the irregularity claimed herein by respondent of substituting the charter agreement for a passenger ticket is preposterous.

The Warsaw Convention refers to the "contract" between carrier and passenger in some 13 provisions. (See *Block* v. *Compagnie Nationale Air France, supra*, 386 F.2d 323 at p. 332 for a discussion of a third party who can "contract" passage vis-à-vis a "passenger ticket.") By contrast, the term "passenger ticket" appears only in article 3. If the Warsaw Convention had wanted to use the terms interchangably, it would most certainly have done so. We note that even if Miceli had received a copy of the 15-page charter agreement between MGM and Music Guide, receipt of the agreement would not in and of itself have given him any right to passage on the aircraft. Miceli was not a party to the contract and therefore it created no relationship between him and the carrier or even between him and the charterer, which is the function of a ticket.

Tickets are issued to passengers, not to charterers. As is clear in *Block*, Air France became subject to the convention not because it assumed contractual responsibility for the transportation of passengers and controlled the aircraft, but because it agreed to carry the particular passenger in question as evidenced by the issuance of a ticket to that passenger. (386 F.2d at p. 353.) The passenger's possession and surrender of the ticket containing notice of the limitation of liability pursuant to the Warsaw Convention is proof of delivery and boarding of the aircraft is the passenger's acceptance of the terms therein, including any liability limitations imposed thereon.

We therefore hold that the charter contract between the air carrier and the charterer does not limit the air carrier's liability to third parties absent the issuance of a "passenger ticket" meeting the requirements of the Warsaw Convention. We further hold that the charter agreement is not a "passenger ticket" for all who board an aircraft under the Warsaw Convention. In this particular situation MGM "accept[ed] a passenger without a passenger ticket having been delivered." Since MGM did not adhere to the provisions of the convention by issuing individual "passenger tickets," it is thereby "not entitled to avail [itself] of those provisions of the convention which limit its liability."

Having decided the first issue herein, there is no need for our consideration of the second issue.

## CONCLUSION

The judgment herein is reversed. The matter is remanded to the trial court for further action in accord with this decision. Costs are awarded to appellants.

Vogel (C. S.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied January 8, 1997, and respondent's petiton for review by the Supreme Court was denied March 19, 1997.