Mohammed S. JAHANGER, M.D.

v.

PUROLATOR SKY COURIER, Purolator Courier Corporation c/o C.T. Corporation Systems.

Civ. A. No. 83–4674.

United States District Court, E.D. Pennsylvania.

June 28, 1985.

Thomas J. McBride, McBride, Ruch & Gontram, Philadelphia, Pa., for plaintiff.

Steven A. Asher, LaBrum & Doak, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Mohammed Jahanger seeks to recover damages he suffered when his shipment of legal documents in support of his claim against the Iranian government arrived at its destination at the Peace Palace, The Hague, one day late for consideration by that body. Plaintiff contends that agents of the defendant, Purolator Sky Courier, made oral representations constituting an oral contract that the shipment would be delivered in four days, and claims that the fact that the delivery actually took five days to reach its destination constitutes a breach of that agreement. Defendant contends that its standard airbill is the express contract governing this shipment. The airbill provides that Purolator does not specifically guarantee a delivery date. The defendant moves for summary judgment on the basis of the terms of the airbill.

In deciding defendant's motion for summary judgment, the Court must determine whether it has carried its burden of showing that there are no genuine issues of material fact which would preclude judgment in its favor as a matter of law. *See Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). As to issues of fact, all reasonable inferences from the evidentiary material of record must be drawn in favor of the plaintiff. *Small v. Seldows Stationary,* 617 F.2d

992, 994 (3d Cir.1980). A response to a properly supported summary judgment motion may not rest on allegations in the pleadings, but must present significant probative evidence in the form of affidavits, depositions, or answers to interrogatories sufficient to create a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Sunshine Books Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982).

The material facts as to which there is no genuine issue establish that plaintiff believed he had a property claim against the Iranian government. In order for that claim to receive consideration, it was essential that certain legal documents be received at the Peace Palace in The Hague by January 19, 1982. On January 12, 1982, a secretary in the office of plaintiff's former attorney in Woodbury, New Jersey called defendant Purolator to inquire about the travel time required to send a package from New Jersey to The Netherlands, and was told that delivery took four days. On January 14, 1982, the same secretary called defendant and asked that the shipment be picked up the following day. Upon pickup on January 15, 1982, plaintiff's lawyer told defendant's courier that someone in defendant's office said delivery would take four days. Defendant's courier responded, "... if that's what they said ... then it must be true."

Defendant's courier filled out a Purolator airbill and left a copy with plaintiff's attorney. Plaintiff's attorney did not read or sign the airbill presented to him. The airbill provides that no specific delivery date is guaranteed. Plaintiff's package did not arrive at its destination until January 20, 1982, precluding plaintiff's opportunity to present his claim against the Iranian government.

Defendant maintains that the five-day delivery in this case was one day longer than the normal delivery time. Defendant's affidavit states that this delivery took an extra day because the Laker Airlines flight used by defendant was diverted by fog to London Stonstead Airport and was not able to land at Gatwick Airport, its scheduled destination. At Stonstead, plaintiff's package was impounded by Customs with all other baggage on the airline. Despite attempts by defendant's agent to expedite the Customs process, plaintiff's package was returned to Gatwick too late to connect with the flight defendant used to transport shipments to Continental Europe [*see* Affidavit of Laurie Watkins]. These allegations by defendant are uncontroverted by plaintiff.

Plaintiff contends that defendant's courier should have advised plaintiff's attorney of the airbill terms inconsistent with plaintiff's expectation that delivery would take four days. It is defendant's position that there is no genuine issue as to any material fact, and that summary judgment should be granted defendant on the ground that the airbill is an express contract between the parties, and that based on the uncontroverted facts of this case parol evidence may not be used to vary the terms of the airbill.

Summary judgment will be granted to defendant. No material factual dispute exists in this case. The only dispute is whether defendant's airbill or the conversations between the agents of the plaintiff and agents of the defendant constitute the contract in this case.

Plaintiff contends that New Jersey law governs the controversy. The Court is of the opinion, however, that the Warsaw Convention, as modified by the Montreal Treaty, governs this case. Title 49 U.S.C. § 1502. The Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire" between signatory nations. Chapter I, Article (1), Title 49 U.S.C. § 1502. The United States and The Netherlands are signatory nations of the Convention. The airbill in this case states that in the event of international carriage, the liability provisions of the Warsaw Convention shall apply to the carriage. It is well-settled that where the contract of the parties provides for international carriage between designated termini, the provisions of the Convention govern the carriage. *Butz*

*v. British Airways,* 421 F.Supp. 127 (E.D. Pa.1976), *aff'd* 566 F.2d 1168 (3d Cir.1977). Where the Warsaw Convention applies, its limitations and theories of liability are exclusive. *Abramson v. Japan Airlines Co., Ltd.,* 739 F.2d 130, 134 (3d Cir.1984); *Boehringer-Mannhein Diagnostics v. Pan Am World Airways, Inc.,* 737 F.2d 456 (5th Cir.1984).

Article 19 of the Warsaw Convention provides that carriers "shall be liable for damage occasioned by delay in transportation of ... goods." In this case the plaintiff contends that an oral agreement explicitly fixed the time for arrival of the plaintiff's goods on January 19, 1982. However, the airbill does not show that any specific time for delivery was stipulated, and in fact the printed provisions on the airbill state that "Due to the nature of the business, Purolator cannot guarantee delivery by a stipulated date or by a stipulated time, nor shall Purolator be liable for the consequences of delay ..."

Article 8(p) of the Warsaw Convention provides that the airbill shall contain "The time fixed for the completion of the transportation and a brief note of the route to be followed, if these matters have been agreed upon." Article 10(1) provides that "The consignor shall be responsible for the correctness of the particulars and statements relating to the goods which he inserts in the air waybill." Article 6(5) of the Convention provides that "If, at the request of the consignor, the carrier makes out the air waybill, he shall be deemed, subject to proof to the contrary, to have done so on behalf of the consignor." Finally, Article 11(1) provides that "The air waybill shall be *prima facie* evidence of the contract ... and of the conditions of transportation."

■ In this case the airbill states on its face that it is "subject to conditions of contract on reverse of shipper's copy". Where the airbill states on its face that the conditions printed on the back are part of the contract, and the shipper receives the airbill and permits the carrier to proceed with the shipment, the shipper is presumed

to have assented to the terms of the airbill. *Carriage Bags, Ltd. v. Aerolinas Argentinas,* 521 F.Supp. 1363, 1366 (D.Col.1981). In *Carriage Bags,* the court observed that in analyzing the legal effect of an airbill under the Warsaw Convention, "the law governing bills of lading is instructive", and stated

> Most courts have held that "a shipper who receives a bill of lading without objection after an opportunity to inspect it, and permits the carrier to act on it by proceeding with the shipment, is presumed to have accepted it as correctly stating the contract and to have assented to its terms."

*Carriage Bags,* 521 F.Supp. at 1366, quoting 13 *Am.Jur.2d* Carriers § 273 (1964). In this case the plaintiff's attorney, who as shipper was responsible for correctly stating the particulars of the airbill contract (including "the time fixed for the completion of the transportation ... if agreed upon", (Article 8(p))) must be presumed to have accepted the airbill as correctly stating the terms of the contract, which states that no specific delivery time will be guaranteed.

Plaintiff nevertheless contends that parol evidence is admissible because defendant perpetrated a fraud upon plaintiff. However, plaintiff has failed to present a cognizable issue of fraud in this case. As discussed *supra,* a response to a motion for summary judgment must rely on significant probative evidence sufficient to create a genuine issue of material fact. Fed.R. Civ.P. 56(e). Plaintiff has produced neither depositions, affidavits, or any other probative evidence in support of his allegations of fraud.

■ Finally, even if the plaintiff were entitled to rely on the fact that Purolator's normal timetable called for delivery to The Netherlands in four days, it has been noted that "Given the inevitable hazards of air navigation, which the carrier's client cannot escape being aware of, many authors and some courts are of the opinion that 'delay' should be construed as meaning 'abnormal delay', i.e., a delay resulting from the carri-

er's failure to take all appropriate measures to ensure departure and arrival of the aircraft at the times specifically specified or indicated in [the] timetable." Mankiewicz, *The Liability Regime of the International Air Carrier* 186 (1981). In this case the defendant's affidavit establishes that the delay of one day was indeed "abnormal" because it resulted from a weather-caused diversion of the carrier's airplane from its normal destination, and that despite the efforts of the defendant's agent to expedite the Customs process, plaintiff's package arrived at its scheduled destination too late to make the connecting flight to The Netherlands. Accordingly, even if plaintiff was somehow entitled to rely on Purolator's normal timetable for deliveries to The Netherlands, this Court is of the opinion that under the circumstances of this case there was no "delay" for which liability could be imposed under Article 19 of the Warsaw Convention. The defendant's motion for summary judgment will be granted.