MONIQUE NAHM, Plaintiff-Appellant, v. SCAC TRANSPORT, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—3629

Opinion filed December 17, 1987.—Rehearing denied April 11, 1988.

Lionel I. Brazen, of Chicago (Paul R. Jenen, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and Neal F. Thompson, of counsel), for appellees.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Monique Nahm (Nahm) engaged SCAC Transport, Inc. (SCAC), which in turn contracted with Flying Tigers, Inc. (Flying Tigers), to transport personal effects from France to Illinois. All the goods were lost during transit, and Nahm filed this action against SCAC and Flying Tigers to recover damages for the loss.

The parties filed cross-motions for summary judgment. SCAC admitted liability to Nahm but maintained that she had agreed to limit SCAC's liability to $10,000. Flying Tigers argued that Nahm had no cause of action against it because the transport of her goods did not

constitute one for "successive carriage" and because she did not contract directly with Flying Tigers. Nahm argued that SCAC and Flying Tigers were liable as a matter of law for the actual value of the goods. The trial court denied Nahm's motion for summary judgment, allowed Flying Tigers and SCAC's motion for summary judgment, and entered judgment against SCAC in the amount of $10,000. Nahm appeals.

Upon review, we determine that the trial court's order must be affirmed in part, reversed in part, and remanded. The record does not establish that Nahm agreed to limit SCAC's liability to $10,000. However, it does indicate that Nahm has no cause of action against Flying Tigers under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 (Warsaw Convention), 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. App. §1502 (1982).

BACKGROUND

In January 1984, Nahm contacted SCAC, an international freight forwarder, at its Paris office. She requested that SCAC cause certain personal effects to be packed and removed from a house in Gagny, France, and transported to Evanston, Illinois. SCAC engaged a company that packed the goods in cartons (in Nahm's presence) and delivered them to SCAC in Paris, France. SCAC telephoned Nahm and requested her social security number and a complete inventory of the goods. SCAC also inquired whether Nahm wished to insure the goods and offered to "handle the insurance for her." Nahm decided to insure the goods for $10,000 and sent SCAC a letter requesting insurance in that amount.

SCAC executed an air waybill to Nahm which specified Flying Tigers as air carrier between Paris and Chicago. The bill was completed after the telephone conversation with Nahm, although the record does not clearly indicate whether SCAC executed the waybill before or after its receipt of Nahm's letter requesting $10,000 in insurance. Nahm never received a copy of the waybill.

Flying Tigers also issued its own air waybill to SCAC, bearing the same date as that appearing on SCAC's waybill to Nahm, to transport from Paris to Chicago a consolidated shipment to be received from SCAC. Thereafter, Flying Tigers undertook air transport of SCAC's consolidated shipment from Paris to Chicago. SCAC's air waybill to Nahm referenced the waybill number appearing on Flying Tigers' waybill to SCAC. Flying Tigers' waybill, however, did not refer to SCAC's waybill to Nahm.

When Nahm learned later that all the goods were lost in transit, she filed an action to recover damages for the loss. Flying Tigers and SCAC filed a motion for summary judgment. SCAC admitted liability in the amount of $10,000, but argued that Nahm's request for $10,000 in insurance coverage constituted an agreement to limit SCAC's liability to that amount. Flying Tigers claimed that Nahm had no cause of action against it because the transport of her goods did not constitute "successive carriage" under the Warsaw Convention and because she did not contract directly with Flying Tigers for the transport of her goods.

Nahm filed a cross-motion for partial summary judgment as to liability. She maintained that she had not made any agreement to limit SCAC's liability and that she had a valid cause of action against Flying Tigers. She also asserted that SCAC and Flying Tigers were jointly and severally liable for the actual value of the lost goods. The trial court denied Nahm's motion, granted Flying Tigers and SCAC's motion, and entered judgment against SCAC in the amount of $10,000. Nahm appeals.

OPINION

I.

SCAC'S MOTION FOR SUMMARY JUDGMENT

The trial court found as a matter of law that Nahm agreed to limit SCAC's liability to $10,000. SCAC asserts that this determination was correct, because Nahm's request for $10,000 in insurance constituted an agreement to limit SCAC's liability to that amount.

■ In order to limit a carrier's liability to a specified amount, a shipper must make an absolute, deliberate, and well-informed choice to do so. (*Anton v. Greyhound Van Lines, Inc.* (1st Cir. 1978), 591 F.2d 103, 108; *Fireman's Fund Insurance Co. v. Barnes Electric, Inc.* (N.D. Ind. 1982), 540 F. Supp. 640, 645-46; see also *Neal v. Republic Airlines, Inc.* (N.D. Ill. 1985), 605 F. Supp. 1145, 1148.) Here, SCAC informed Nahm that she could insure the goods for any value she chose and that SCAC would "handle the insurance for her." She was also told that there would be an incremental charge for the insurance. However, SCAC never told Nahm that her choice in an insurance amount would be construed by SCAC to limit SCAC's liability to whatever amount she designated. Under these circumstances, Nahm's request for $10,000 in insurance did not constitute an absolute, deliberate, and well-informed choice to limit SCAC's liability to a specified

sum. As a result, SCAC failed to show as a matter of law that Nahm agreed to limit SCAC's liability to $10,000.

■ SCAC also contends that under the "released value doctrine," SCAC's liability is limited to $10,000. On this record, we find the doctrine inapplicable to the facts of this case. The "released value doctrine" limits a carrier's liability to whatever value, agreed to between the shipper and the carrier, upon which the carrier fixes its freight rate to the shipper. (See, *e.g.*, *Kansas City Southern Ry. Co. v. Carl* (1913), 227 U.S. 639, 651, 57 L. Ed. 683, 688, 33 S. Ct. 391, 394; *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.* (3d Cir. 1984), 731 F.2d 1113, 1116; see also *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.* (2d Cir. 1980), 616 F.2d 619, 626, *cert. denied sub. nom. Maislin Transport v. Farren Lines, Inc.* (1980), 449 U.S. 875, 66 L. Ed. 2d 96, 101 S. Ct. 217.) Nahm's letter requested $10,000 worth of insurance. It neither referred to nor mentioned any freight rate which SCAC would charge to her based upon a valuation of the goods. Similarly, SCAC's offer to "handle the insurance" for Nahm made no mention that Nahm would be assessed a freight rate based upon a certain value of the goods. Consequently, SCAC's summary judgment motion failed to establish that, pursuant to the released value doctrine, Nahm had agreed to a valuation of her goods relied upon by SCAC in fixing a freight rate, such that SCAC's liability should be limited to that valuation.

■ As an alternative ground for sustaining the allowance of summary judgment, SCAC urges that Nahm misrepresented the value of her goods when she requested $10,000 in insurance. We disagree. Nahm's letter specified an amount of insurance; it did not represent that the goods were actually valued at that amount. See, *e.g.*, *Marlen Stamp & Coins, Ltd. v. Rapp* (E.D.N.Y. 1984), 18 Av. Cas. (CCH) par. 17,810.

■ For the reasons stated, we conclude that SCAC's motion for summary judgment did not establish, as a matter of law, that Nahm agreed to limit SCAC's liability to $10,000. Accordingly, the trial court erred in allowing SCAC's motion for summary judgment limiting its liability to $10,000.

## II.

### FLYING TIGER'S MOTION FOR SUMMARY JUDGMENT

■ The trial court entered summary judgment for Flying Tigers on the basis that under the Warsaw Convention, Nahm had no cause of action against Flying Tigers as a successive carrier. Nahm argues

that her suit against Flying Tigers was proper because the transport was for successive carriage. Under the Warsaw Convention, "successive carriage" occurs where all of the parties intended and understood that performance of the shipment by several carriers would nevertheless constitute a single, international operation. When the transport is one for successive carriage, a shipper whose goods have been lost in transit has a right of action against both the first carrier and the carrier which performed the transport during which the loss took place. Warsaw Convention, Articles 1(3), 30(3), 49 U.S.C. App. §1502 (1982); see, *e.g., In re Alleged Food Poisoning Incident, March, 1984* (2d Cir. 1985), 770 F.2d 3, 5-6; *In re Air Crash Disaster, Warsaw, Poland, March 14, 1980* (2d Cir. 1984), 748 F.2d 94, 95-97; *P. T. Airfast Services, Indonesia v. Superior Court County of Siskiyou* (1983), 139 Cal. App. 3d 162, 168-70, 188 Cal. Rptr. 628, 633-34; *Egan v. Kollsman Instrument Corp.* (1967), 21 N.Y.2d 160, 165-68, 287 N.Y.S.2d 14, 17-19, 234 N.E.2d 199, 201-02, *cert. denied sub. nom. American Airlines, Inc. v. Egan* (1968), 390 U.S. 1039, 20 L. Ed. 2d 301, 88 S. Ct. 1636.

■ The record in the instant case establishes that Flying Tigers did not understand and intend that its transport of SCAC's consolidated shipment from Paris to Chicago included Nahm's goods, and that transport of Nahm's goods by Flying Tigers was a single, international operation between Gagny, France, and Evanston, Illinois. The record shows that Flying Tigers knew, as evidenced in its air waybill to SCAC, only that it had agreed to perform air carriage of an SCAC consolidated shipment from Paris to Chicago. Nahm presented no evidence to demonstrate that Flying Tigers was aware that SCAC's consolidated shipment included Nahm's goods and also knew that shipment of her goods was to be considered a single, international operation between France and Illinois. As a result, although Nahm and SCAC may have been aware and agreed that shipment of her goods would be performed by several carriers between Gagny, France, and Evanston, Illinois, in a single international operation, nothing in the record shows that Flying Tigers knew and understood this as well. Under these circumstances, shipment of Nahm's goods by Flying Tigers was not a transport of successive carriers under the Warsaw Convention, and the trial court properly entered summary judgment in favor of Flying Tigers.

■ Nahm maintains that whether the transport was one for successive carriage depended only upon the understanding and agreement of Nahm and SCAC, and not the understanding of Flying Tigers. To support this position, Nahm relies upon *Parke, Davis & Co.*

*v. British Overseas Airways Corp.* (1958), 11 Misc. 2d 811, 170 N.Y.S.2d 385, and *Leon Bernstein Commercial Corp. v. Pan American World Airways* (1979), 72 A.D.2d 707, 421 N.Y.S.2d 587. Nahm's argument is not well taken. Neither of the decisions relied upon by Nahm considered the interpretation to be given to the definition of "successive carriage" stated in articles 1(3) and 30 of the Warsaw Convention. Instead, *Parke, Davis & Co.* and *Leon Bernstein Commercial Corp.* concerned whether the Convention requires privity of contract between the shipper and the specific air carrier (of several who performed the transport) against whom suit had been filed. Where the question of "successive carriage" has been considered, it has been held that "[u]nder Article 1(3), all parties—the successive carriers as well as the passenger [or shipper]—must regard the domestic and overseas flights as a 'single operation.' [Citations.]" *In re Air Crash Disaster, Warsaw, Poland, March 14, 1980* (2d Cir. 1984), 748 F.2d 94, 96; see also *P.T. Airfast Services, Indonesia v. Superior Court County of Siskiyou* (1983), 139 Cal. App. 3d 162, 169, 188 Cal. Rptr. 628, 634 ("The unilateral expectation of one party alone cannot be deemed controlling"); *Egan v. Kollsman Instrument Corp.* (1967), 21 N.Y.2d 160, 165-68, 287 N.Y.S.2d 14, 17-19, 234 N.E.2d 199, 201-02; *Kenner Products-General Mills, Inc. v. The Flying Tiger Lines, Inc.* (N.D. Ill. Oct. 14, 1987), No. 87C126.

In view of this disposition, we need not and do not address Flying Tigers' argument that Nahm could not sue Flying Tigers because she was not a party to Flying Tigers' air waybill to SCAC.

■ Nahm also argues that the trial court should have allowed her motion for partial summary judgment as to liability. Because SCAC admits its liability to Nahm, we remand to the trial court Nahm's claim against SCAC with directions that the trial court allow her partial summary judgment motion with respect to SCAC's liability, and hold further proceedings with regard to the amount of SCAC's liability to Nahm. (See generally 107 Ill. 2d R. 366(a)(5); *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 494, 505 N.E.2d 314; *Tri-State Bank v. Colby* (1986), 141 Ill. App. 3d 807, 813, 490 N.E.2d 1037.) Because we determine that the trial court properly entered summary judgment in favor of Flying Tigers, we affirm the trial court's judgment with regard to Nahm's claim against Flying Tigers.

Affirmed in part; reversed in part and remanded.

LINN and JIGANTI, JJ., concur.