**Luis Fernando VELASQUEZ, as Personal Representative of the Estate of Maria Cecilia Velasquez, Deceased, and on behalf of Jaime Velasquez, and Guido Jesus Velasquez, Plaintiff,**

v.

**AEROVIAS NACIONALES DE COLOMBIA, S.A., Avianca Inc., and Commodore Aviation, Inc., Defendants.**

**Luis Fernando VELASQUEZ, as Personal Representative of the Estate of Mario Velasquez, Deceased, and on behalf of Luis Fernando Velasquez, Jaime Velasquez and Guido Jesus Velasquez, Plaintiff,**

v.

**AEROVIAS NACIONALES DE COLOMBIA, S.A., Avianca Inc., and Commodore Aviation, Inc., Defendants.**

**Nos. 90–1564–CIV, 90–1565–CIV.**

United States District Court, S.D. Florida.

Aug. 29, 1990.

On Rehearing Oct. 29, 1990.

Kevin A. Malone, Krupnick, Campbell, Malone & Rosell, Carlos Velasquez, Montero, Finizio & Velasquez, Fort Lauderdale, Fla., for plaintiff.

---

Victor Diaz, Jr., Aaron S. Podhurst, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, Fla., amicus curiae for plaintiff.

Michael K. McLemore, Kimbrell & Hamann, Miami, Fla., Michael J. Holland, Condon & Forsyth, New York City, for defendants.

## MEMORANDUM OPINION

SCOTT, District Judge.

These actions arise out of a tragic airplane accident which occurred in Cove Neck, New York, on January 25, 1990.[1] As a result of this unfortunate event, the Court is presented with its first opportunity to consider whether the Warsaw Convention, 49 Stat. 3000, reprinted at 49 U.S. C.App. 1502 (1976)[2] provides the exclusive cause of action for the victims of an international air disaster. Having exhaustively reviewed the record and applicable legal authority, as well as having conducted a hearing on this matter, the Court now renders the following memorandum opinion.[3]

## I. FACTUAL BACKGROUND

On January 25, 1990, Avianca Flight 52 departed from Medellin, Colombia.[4] Shortly before its scheduled arrival at John F. Kennedy Airport, Flight 52 crashed in Cove Neck, New York, at approximately 9:30 p.m. As a result of this air disaster, sixty-five passengers were killed and eighty-four passengers were severely injured. As is often the case in accidents of this magnitude, a vast amount of litigation has been initiated in multiple jurisdictions.

As of the date of this Order, forty-three death and personal injury actions have been filed against the defendants Aerovias Nacionales De Colombia, S.A., Avianca Incorporated, and Commodore Aviation Incorporated (collectively "AVIANCA"). Of these pending actions, five were filed in the Circuit Court in and for Dade County, Florida.[5] The two actions under present consideration were filed by Luis Fernando Velasquez, the personal representative of the estates of Maria Cecilia Velasquez and Mario Velasquez. Velasquez has grounded each of these actions strictly in terms of Florida's Wrongful Death Act. See, Florida Statute, sections 768.16–768.27. In each of the complaints, Velasquez has carefully avoided making the slightest reference to a federal cause of action.

Shortly after these actions were commenced in state court, Avianca sought removal pursuant to 28 U.S.C. 1441, to the United States District Court for the Southern District of Florida. The following represents a compilation of the actions sought to be removed:

1. *Luis Julio Cediel, et al. v. Aerovias Nacionales de Colombia, S.A., Avianca, Inc. and Commodore Aviation Inc.*, 90–1515–Civ–Ryskamp.

2. *Jesus E. Calderon, et al. v. Aerovias Nacionales de Colombia, S.A., Avianca, Inc. and Commodore Aviation Inc.*, 90–1045–Civ–Aronovitz.

---

1. By Order dated July 25, 1990, the Court consolidated the above-captioned causes of action for the limited purpose of considering the motions for remand filed in each case.

2. Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, 3014, reprinted in 49 U.S.C.App. note following section 1502. We shall refer to this international treaty by its more popular, and less cumbersome name, the Warsaw Convention.

3. In addition to counsel of record, Attorney Victor Diaz, Jr. of the Podhurst, Orseck law firm appeared, *amicus curiae,* at the August 3, 1990,

hearing on behalf of the plaintiffs. The Court has given due consideration to the excellent *amicus curiae* brief.

4. Flight 52 which originated in Bogota, Colombia, made its first scheduled stop in Medellin, Colombia. From Medellin, the flight was to travel to John F. Kennedy Airport in New York, New York.

5. The remaining actions have been filed in the United States District Courts in and for the Eastern and Southern Districts of New York. By Order dated June 14, 1990, the Judicial Panel on Multidistrict Litigation transferred these actions to the Eastern District of New York for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. 1407.

3. *Luis Fernando Velasquez, et al. v. Aerovias Nacionales de Colombia, S.A., Avianca Inc. and Commodore Aviation Inc.*, 90–1564–Civ–Scott.

4. *Luis Fernando Velasquez, et al. v. Aerovias Nacionales de Colombia, S.A. Avianca, Inc. and Commodore Aviation Inc.*, 90–1565–Civ–Scott.[6]

In essence, Avianca asserts that these actions are properly removed to federal court as a result of the exclusivity of the Warsaw Convention—that is, the Warsaw Convention provides *the sole cause of action* under which the victim of an international air disaster may proceed. Conversely, the plaintiffs allege that the Warsaw Convention merely provides *the exclusive remedy* for such victims—that is, it does not prescribe the exclusive cause of action.[7] Fully cognizant of the depth of emotion that such tragedies naturally invoke, we now proceed to consider the legal basis of plaintiff's motion for remand.

## II. LEGAL ANALYSIS

The actions under consideration present difficult questions regarding interpretation of the Warsaw Convention. These questions have come to fruition as a result of Avianca seeking removal of these actions to federal court pursuant to 28 U.S.C. section 1441.[8] To properly address the questions that have arisen, it is essential that the Court consider, at the outset, the history and intent behind the Warsaw Convention.

### (A). History Of The Warsaw Convention

The Warsaw Convention is an international treaty to which both Colombia and the United States are signatories. In fact, most of the major countries of the world whose airlines have international routes have chosen to adhere to the terms of this treaty. *See,* Lee S. Kreindler, 1 Aviation Accident Law section 11.01[3] at 11–7 (1988) (listing those countries which are signatories of the Warsaw Convention); Lawrence B. Goldhirsch, *The Warsaw Convention Annotated: A Legal Handbook*, (1988); *In re Aircrash In Bali, Indonesia On April 22, 1974*, 684 F.2d 1301 (9th Cir.1982). The Warsaw Convention was the result of two international conferences held in Paris, France in 1925 and Warsaw, Poland in 1929. The United States declined an invitation to participate in the drafting of the Convention. However, the United States did appoint two representatives, John Ide and McCeney Werlich, to observe the proceedings. Following ratification by several countries, the United States eventually pronounced its adherence to the Warsaw Convention in 1934. On June 15, 1934, the Senate approved the Convention by voice vote. 78 Cong.Rec. 11,582 (1934); *see,* Lowenfeld and Mendelsohn, 80 *Harv.L. Rev.* at 502.

6. The fifth case filed in the Circuit Court in and for Dade County, Florida, which Avianca has not sought to remove to federal court is: *Jose Daniel Tellez et al. v. Aerovias Nacionales De Colombia, S.A., Avianca Inc., and Commodore Aviation, Inc.*, 90–27476. Removal was not sought as this case involves the death of a crew member aboard Avianca flight 52.

7. By Order dated May 23, 1990, Judge Aronovitz, relying exclusively upon Chief Judge James Lawrence King's decision in *Rhymes v. Arrow Air, Inc.*, 636 F.Supp. 737 (S.D.Fla.1986), granted plaintiff's motion to remand filed in Case No. 90–1045. However, in his Order, Judge Aronovitz did recognize authority holding to the contrary.

8. This statutory provision provides in pertinent part as follows:

*Section 1441. Actions removable generally:*

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

From the outset, the Warsaw Convention provoked a great deal of debate and dissatisfaction among the majority of signatory countries, including the United States. *See,* Lowenfeld and Mendelsohn, 80 *Harv. L.Rev.* at 502. Especially bothersome was the limitation on liability set forth in Article 22 of the Convention. In an effort to eradicate this dissatisfaction, the signatories to the Convention met at the Hague in 1955. This meeting, known as the Hague Protocol, had the effect of increasing the limitation of liability to approximately $16,-600 in American currency.[9] *Hague Protocol Art. XI,* reprinted in Andreas F. Lowenfeld, *Aviation Law Documents Supp.* 958–59 (2d Ed.1981). Eleven years later the Montreal Agreement was enacted.[10] This Agreement increased the limitation on liability to $75,000 in American currency. Since the time of Montreal, additional international conferences have been convened in an attempt to revise the terms of the Warsaw Convention. However, the United States has chosen to abide by the Warsaw Convention, as modified by the Montreal Agreement. *See, Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1469 (11th Cir. 1989); Stuart M. Speiser and Charles F. Krause, 1 *Aviation Tort Law* section 11.20 at 680–83 (1978 and 1988 Supp.).

At the time the Warsaw Convention was convened in October 1929, commercial air travel was in its infancy.[11] In fact, Charles Lindberg had flown "The Spirit of St. Louis" across the Atlantic Ocean only two years before in 1927. The sole international airliner conducting business in the United States at that time operated flights between Havana, Cuba and Key West, Florida. *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967); Wright, "The Warsaw Convention's Damage Limitations," 1957 *Clev.Mar.L.Rev.* 290–91. Although commercial air travel was just a burgeoning industry at this time, "[c]ommon rules to regulate international air carriage [h]ad become a necessity." *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462 (11th Cir.1989); *Minutes,* "Second International Conference on Private Aeronautical Law," October 4–12, 1929, Warsaw 13 (English translation by Robert C. Horner and Didier Legrez 1975) ("Minutes") (address of Mr. Lutostanski, head of the Polish delegation). As a result of such necessity, the Warsaw Convention was adopted.

Courts and commentators alike are in agreement that the Warsaw Convention had two primary objectives. The first objective was to place a limitation on the potential liability of the airliners in the event of accidents and lost or damaged goods. *Minutes,* at 37; *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); Andreas F. Lowenfeld and Allan I. Mendelsohn, "The United States and the Warsaw Convention," 80 *Harv.L.Rev.* 497, 498–99 (1967) ("Lowenfeld and Mendelsohn"). The second objective was to establish a uniform system for handling claims arising out of international air transportation. *Minutes,* at 85, 87. The case authority discussing the delegates' desire to achieve such uniformity is abundant.[12]

9. The United States has never adhered to the Hague Protocol.

10. Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, approved by CAB Order No. E–28680, May 13, 1966, 31 Fed.Reg. 7302 (1966).

11. "The total airline operations in the five-year period 1925–1929—domestic as well as foreign travel—were only 400 million passenger miles. The fatality rate was 45 per 100 million passenger miles. This compares with the rate of 0.55 fatalities per 100 million passenger miles in 1965. 1965 Annual Report of the ICAO Council to the ICAO Assembly 13. The larger airlines could carry 15 to 20 passengers at cruising speeds of about 100 miles per hour and over stages of about 500 miles. The most advanced and popular United States aircraft, the Lockheed Vega, which carried six passengers and a pilot, had a cruising speed of about 120 miles per hour and a range of about 500 miles...." Lowenfeld and Mendelsohn, "The United States and the Warsaw Convention," 80 *Harv.L.Rev.* 497, 498 (1967).

12. *Reed v. Wiser,* 555 F.2d 1079, 1090 (2nd Cir.) cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977) ("[A] fundamental purpose of the signatories to the Warsaw Convention, which is entitled to great weight in interpreting that pact, was their desire to establish *a uniform*

The delegates' desire to establish an exclusive and uniform liability system in the context of international air travel is vividly illustrated by the following statements:

> *Mr. Ambrosini (Italy):* We wish that the Convention be applied in all cases, and it is for this reason that I proposed the formula which we have adopted; naturally, one can find something more precise, but it's a question for the drafting committee. In any case, *recourse to national law must be ruled out.* (emphasis supplied).

> \* \* \* \* \* \*

> *Mr. Ripert (France):* We will do our best to find the formula which will be satisfactory, but it is agreed that from this point on, *we are absolutely opposed to a formula that would lead to the application of national law.* It's the first time that application of national law is required, and if it were allowed for this question, it would be required for others. From our point of view, one would thus arrive in destroying the Convention, if one establishes recourse to national law upon each article. (emphasis supplied).

> We will be as conciliatory as possible on the formula to be adopted; we will develop it as much as possible, but I beg the delegates not to enter upon this dangerous course which would consist in reserving the result of the litigation to national law.

*Minutes,* at 65–66.

Whatever the validity of these objectives today,[13] uniformity and limitation of liability certainly remain integral features of the Warsaw Convention. *Floyd v. Eastern*

*body of world-wide liability rules* to govern international aviation, which would supersede with respect to international flights the scores of differing domestic laws, leaving the latter applicable only to the internal flights of each of the countries involved") (emphasis supplied); *Benjamins v. British European Airways,* 572 F.2d 913 (2nd Cir.1978); *In re Aircrash In Bali, Indonesia On April 22, 1974,* 684 F.2d at 1304–1305; *Boehringer—Mannheim Diagnostics v. Pan Am World,* 737 F.2d 456 (5th Cir.1984); *Harpalani v. Air India, Inc.,* 622 F.Supp. 69 (D.C.Ill.1985); *St. Paul Ins. Co. v. Venezuelan Intern. Airways,* 807 F.2d 1543 (11th Cir.1987); *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462

*Airlines, Inc.,* 872 F.2d at 1468. Our decision today seeks to carry out the objectives and spirit of the Warsaw regime.

### (B). Does The Warsaw Convention Create A Cause Of Action

■ Prior to considering the exclusivity of the Warsaw Convention, the Court must first determine whether the Convention creates a cause of action for death and personal injury actions. Immediately following enactment of the Convention, many of the courts and commentators that considered this question acknowledged the creation of a cause of action thereunder. *See, Salamon Koninklijke Luchtvaart Maatschappij, N.V.,* 107 N.Y.S.2d 768 (Sup.Ct. 1951), *aff'd mem.* 281 App.Div. 965, 120 N.Y.S.2d 917 (1st Dept.1953); Lowenfeld and Mendelsohn, 80 *Harv.L.Rev.* at 517.

This consensus of judicial construction, however, was short-lived. In the mid–1950's the Second Circuit handed down two seminal opinions in which it was concluded that the Convention failed to create a cause of action. *Komlos v. Compagnie Nationale Air France,* 209 F.2d 436 (2nd Cir.), *cert. denied,* 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954); *Noel v. Linea Aeropostal Venezolana,* 247 F.2d 677 (2nd Cir.) *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957). Thereafter, for over two decades, these two decisions were followed by courts throughout the country. *Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256, 1258, n. 2 (9th Cir.), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1957).

(11th Cir.1989); *Eggink v. Trans World Airlines, Inc.,* No. 87–3403 (S.D.N.Y.1990) (1990 WL 6553 available on Lexis July 27, 1990) ("A central purpose of the Convention is to promote international air travel and transport by establishing uniformity with respect to the liability of carriers").

**13.** *See,* Kreindler, 1 *Aviation Accident Law* section 11.01[6] at 11–13; *Comment,* "Warsaw Convention Liability Limitations: Constitutional Issues, 6 Nw.J.Int'l. L. & Bus. 896 (1984); *Comment,* "The Growth of American Judicial Hostility Towards the Liability Limitations of the Warsaw Convention," 48 J.Air L. & Com. 805 (1983).

In 1978, however, the Second Circuit was presented with the opportunity to reconsider the logic it previously employed in deciding the *Komlos* and *Noel* cases. On this occasion, giving great deference to the objectives of the Warsaw regime, the Second Circuit reversed its prior reasoning by recognizing a cause of action for death and personal injury actions. *Benjamins v. British European Airways*, 572 F.2d 913 (2nd Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). Other circuits soon adopted this analysis. *See, Boehringer–Mannheim Diagnostics, Inc., v. Pan American World Airways, Inc.*, 737 F.2d at 458; *Abramson v. Japan Airlines Co.*, 739 F.2d 130 (3rd Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 n. 5 (7th Cir.1989); *In re Mexico City Aircrash*, 708 F.2d 400 (9th Cir.1983). In *Floyd v. Eastern Airlines, Inc.*, the Eleventh Circuit, presented with an opportunity to consider this question, concluded that the Warsaw Convention does create a cause of action in personal injury and death cases. *Floyd v. Eastern Airlines, Inc.*, 872 F.2d at 1470.[14] Thus, although this issue has been the subject of somewhat inconsistent analysis during the course of its development, it has been squarely addressed and resolved within this circuit.

### (C). Is The Cause Of Action Created By The Warsaw Convention Exclusive

■ Having determined that the Warsaw Convention creates a cause of action, we now turn to the more difficult question of whether such an action is exclusive to the victims of international air disasters. This question is of great importance to aviation litigation and is considered by this Court for the first time. Given the progression of the case authority, as well as the overriding objective of the Convention to establish a uniform system of liability, we are compelled to hold that the Warsaw Convention provides the exclusive cause of action in cases such as this.[15]

The exclusive nature of the Convention is initially evidenced by those cases involving claims for lost baggage and damaged goods. In such cases, the Warsaw Convention directs its reader to Articles 18 and 24(1). These provisions state, in pertinent part, as follows:

*Article 18:* (1). The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

\* \* \* \* \* \*

*Article 24:* (1). In the cases covered by articles 18.... any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.[16]

\* \* \* \* \* \*

Upon consideration of the forgoing provisions, courts have unanimously held that the Warsaw Convention *provides the exclusive cause of action* in lost baggage and damaged goods cases. *See e.g., Jahanger v. Purolator Sky Courier*, 615 F.Supp. 29 (D.C.Pa.1985); *Rucumar Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 797–98 (D.C.N.Y.1985) ("The exclusivity of the Warsaw Convention to any claim for damages arising out of international transpor-

---

**14.** The United States Supreme Court has not expressly decided this question. *See, Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989).

**15.** The Court recognizes that its opinion today is contrary to the holding reached by Chief Judge King in *Rhymes v. Arrow Air, Inc.*, 636 F.Supp. 737 (S.D.Fla.1986). However, having thorough-ly considered the reasoning employed in *Rhymes* the Court must respectfully disagree and reach a contrary conclusion.

**16.** In order to ensure uniformity of interpretation, which was one of the paramount objectives of the Convention, the text of the Warsaw Convention was "drawn up in French in a single copy." *Article 36.* The English version used here was originally published in a Treaty Information Bulletin of the Department of State in March 1934. 78 *Cong.Rec.* # 115 77–82 (1934).

tation is established in Article 24 of the Convention"); *Stanford v. Kuwait Airlines Corp.*, 705 F.Supp. 142, 143 (S.D.N.Y. 1989) ("The terms of the Warsaw Convention exclusively govern the rights and liabilities of the parties. . . ."). In particular, the Eleventh Circuit has stated that "[t]he Warsaw Convention creates the cause of action . . . . . . and is the exclusive remedy against international air carriers for lost or destroyed cargo." *St. Paul Ins. Co. v. Venezuelan Intern. Airways*, 807 F.2d 1543 (11th Cir.1987). Having so stated, the question then becomes whether this exclusivity finding should extend to personal injury and death cases.

Such cases are governed by Articles 17 and 24(2) of the Warsaw Convention.[17] The majority of courts to address this issue have found the cause of action prescribed under the Warsaw Convention to be exclusive in such cases.[18] *See, Abramson v. Japan Airlines Co., Ltd.*, 739 F.2d 130, 134 (3rd Cir.1984) (court indicated that it would hold the Convention to be the exclusive basis for recovery), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 459 (5th Cir.1984); *Benjamins v. British European Airways*, 572 F.2d at 919 ("[T]he desirability of uniformity in international air law can best be recognized by holding that the Convention, otherwise universally applicable, is also the universal source of a right of action"). In this regard, the court in *In re Air Crash Disaster At Warsaw, Poland, Etc.*, stated the following:

"[T]he Warsaw Convention specifically controls and exclusively governs any and all claims for damages arising out of the death or injury of a passenger engaged in international air transportation, and plaintiffs cannot maintain a separate wrongful death action for damages under [state] law."

*In Re Air Crash Disaster At Warsaw, Poland, Etc.*, 535 F.Supp. 833, 844–45 (E.D. N.Y.1982), *aff'd*, 705 F.2d 85 (2nd Cir.). In so holding, these courts have emphasized the Convention's overriding concern for uniformity and the avoidance of overwhelming chaos that would otherwise result.

Given this concern for uniformity, it would make little sense to hold that the Convention allows separate state law causes of action to supersede its exclusivity. In this country alone, such a holding would expose air carriers to fifty (50) separate and distinct causes of action for wrongful death. Obviously, such a result would fatally impair the Convention's ability to provide for both the *substantive and procedural* uniformity envisioned by its drafters. In addition, a holding that abandons the primary objective of uniformity would undoubtedly open the floodgate to both plaintiff forum shopping and inconsistent verdicts. Such devistating consequences would not only serve to ignore but would ultimately destroy the intent of the Convention's drafters.

### *(D). Jurisdiction Over The Warsaw Convention*

■ Although the Court concludes today that the Warsaw Convention creates the

---

**17.** These Articles provide as follows:
*Article 17:* "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."
*Article 24(2):* "In the cases covered by article 17 the provisions of the preceding paragraph [Article 24(1) ] shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights."

**18.** The Eleventh Circuit Court of Appeals has not expressly decided this issue. However, in *Floyd v. Eastern Airlines, Inc.*, the Court did provide a degree of insight to this question when construing *Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152 (D.N.M.1973), a psychic injury case, it stated:
"[T]he plaintiffs' action in *Burnett* was founded on state law, . . . not on the Warsaw Convention itself, which also places its conclusion on somewhat uncertain footing."
*Floyd v. Eastern Airlines, Inc.*, 872 F.2d at 1477.

exclusive cause of action in wrongful death cases, we recognize that there exists concurrent jurisdiction. A plaintiff may file an action brought pursuant to the Warsaw Convention in either federal or state court. *See e.g., Eastern Airlines, Inc. v. King,* 557 So.2d 574 (Fla.1990); *Schmoldt Importing Company v. Pan American World Airways, Inc.,* 767 P.2d 411 (Ok. 1989); *Maro v. Aerolineas Argentinas,* 142 A.D.2d 265, 535 N.Y.S.2d 982 (N.Y. App.Div.1988); *Arkin v. New York Helicopter Corp.,* 21 Avi. 17, 679 (N.Y.S.Ct. 1988); *Nahm v. SCAC Transport, Inc.,* 167 Ill.App.3d 971, 118 Ill.Dec. 911, 522 N.E.2d 581 (Ill.App.Ct.1988); *Newsome v. Trans International Airways,* 492 So.2d 592 (Ala.1986). However, should the plaintiff choose to file his action in state court, the option of removal then becomes available to the defendant.

## III. CONCLUSION

The rapid evolution of air travel has provided a unique ability to quickly transcend national boundaries and the laws which pertain therein. Such a reality necessitates the existence of uniform regulation. To hold otherwise would remove the cause of action available to the international traveler from the rule of reason to the realm of mere fortuity. Accordingly, based upon the foregoing analysis and the authorities cited therein, it is hereby ORDERED and ADJUDGED as follows:

1. The Motion For Remand filed in each of the above-styled actions is DENIED. The Court finds that these actions are properly removed.

**19.** This statutory provision states in pertinent part as follows:

*Section 1292. Interlocutory decisions:*
"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made

2. The Court is of the opinion that this decision involves controlling questions of law as to which there is ground for a difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation within the meaning of 28 U.S.C. 1292(b).[19] Therefore, the issues decided herein are certified for interlocutory appeal.

3. Proceedings in this Court are stayed for ten (10) days. Either before or at that time, plaintiff shall advise the Court whether it will appeal.

DONE and ORDERED.

## ORDER ON MOTION FOR REHEARING

By Memorandum Opinion dated August 28, 1990, the Court held that the Warsaw Convention[1] creates the exclusive cause of action for the victims of international air disasters. As a result of this holding, the Court concluded that the above-styled actions were properly removed to federal court. Within its Opinion, the Court provided the plaintiff with the right to take an interlocutory appeal pursuant to 28 U.S.C. 1292(b). The plaintiff declined to take such an appeal, but rather moved for a rehearing of the Court's Memorandum Opinion. The Court held oral argument on this most recent motion to ensure the plaintiff with a full and fair opportunity to advance its position.[2] Having thoroughly considered the arguments advanced by counsel at oral argument as well as in their memoranda, the Court is now prepared to rule.

to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**1.** 49 Stat. 3000, reprinted at 49 U.S.C.App. 1502 (1976).

**2.** Once again, the Court has permitted the law firm of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin to appear *amicus curiae* on behalf of the plaintiff. The Court has given due consideration to the *amicus curiae* motion and supporting memorandum.

In the motion for rehearing, the plaintiff essentially concedes his argument regarding the exclusivity of the Warsaw Convention [3]—and rather focuses upon the removability of such actions to federal court.[4] Simply stated, the plaintiff argues that the actions under consideration are not removable to this Court because a state claim has been pleaded in the complaint and "complete preemption" is inapplicable in this instance.

A great deal of the plaintiff's memorandum is devoted to classifying our holding as the only one of its kind.[5] However, as recognized by plaintiff at oral argument, this contention is in error. In fact, as recent as January 22, 1990, Judge Kram of the Southern District of New York found the Warsaw Convention to provide the exclusive cause of action and accordingly removed the case to federal court. *Eggink v. Trans World Airlines, Inc.*, 87 Civ. 3403 (S.D.N.Y. Jan. 22, 1990) 1990 WL 6553. Specifically, the court stated the following:

> To the extent that plaintiff's damages occurred during "transportation by air" as defined in Articles 18 and 19 of the Convention, the federal cause of action under the Warsaw Convention is the exclusive cause of action. In such a case,

the rule that plaintiff is master of his complaint is not offended because what plaintiff has pleaded must necessarily be a federal claim. For these reasons, removal to this Court was proper and plaintiff's motion to remand the case to state court is denied.

*Id.* at 3. In this vein, the Second Circuit has explained that even though the plaintiff remains the master of his complaint, "a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading.'" *Travelers Indemnity Company v. Sarkisian*, 794 F.2d 754, 758 (2nd Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

Similarly, in the present context, the plaintiff's claim is *exclusively* governed by federal law, namely the Warsaw Convention. The Warsaw Convention does not merely present a defense to the plaintiff's complaint, but rather embodies the cause of action under which plaintiff must proceed. Therefore, the plaintiff has necessarily pleaded a federal cause of action, whether he chooses to articulate it that way or not. For these reasons, removal to federal court was proper.[6]

---

**3.** As stated by the plaintiff in the memorandum in support of the motion for rehearing: "[t]he bottom line of our argument is that whether or not the Warsaw Convention represents the plaintiff's sole cause of action, this case was not removable to federal court." *Memorandum in Support of Motion for Rehearing*, at p. 2.

**4.** With regard to the exclusivity of the Warsaw Convention the plaintiff has asserted one argument. Specifically, the plaintiff argues that the "however founded" language of Article 24 compels the Court to find the Convention to be non-exclusive. In this regard, Article 24 of the Warsaw Convention states as follows:

> (1) In the cases covered by Articles 18 and 19 [lost or damaged baggage] any action for damages, *however founded*, can only be brought subject to the conditions and limits set out in this Convention. (emphasis supplied).
> (2) In the cases covered by Article 17 [death or personal injury] the provisions of the preceding paragraph also apply....

The Court rejects this argument. The "however founded" language of Article 24 governs cases concerning *both* lost baggage and damaged goods, as well as, cases concerning death or personal injury. Courts that have considered

the "however founded" language in the context of lost or damaged goods cases have found the Warsaw Convention to provide the exclusive cause of action. *See e.g., Jahanger v. Purolator Sky Courier*, 615 F.Supp. 29 (D.C.Pa.1985); *Recumar Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795 (D.C.N.Y.1985). The Court finds no basis for distinguishing the "however founded" language in the context of death or personal injury actions from the interpretation given in damaged or lost baggage cases.

**5.** Specifically, plaintiff has asserted the following: "[o]n the question of removal, this Court's decision is the only decision of its kind." *Memorandum in Support of Motion for Rehearing*, at p. 3.

**6.** At oral argument, the plaintiff discussed several practical considerations in an attempt to persuade the Court. However, the Court had exhaustively considered each of these considerations prior to entering its Memorandum Opinion of August 28, 1990.

While the Court fully understands the practical ramifications of its Opinion, we are dutibound to follow the law as we perceive it. In any case, if the Court is wrong, we are confident

Based upon the foregoing analysis and the authorities cited therein, the Court declines to change or amend its previous ruling. To hold that an international treaty such as the Warsaw Convention provides the exclusive cause of action in the context of international air disasters yet actions brought thereunder are not removable to federal court would be nothing more than sheer sophistry. Such a holding would ignore both the spirit and intent behind the Warsaw Convention. Accordingly, the Court's Memorandum Opinion of August 28, 1990, stands as entered.

DONE and ORDERED.

that the Eleventh Circuit Court of Appeals will remedy the situation when it is eventually presented. We are also confident that the other Judges of this District can reach their own conclusion after considering the various arguments of counsel.